O21RBIRc

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        23-CR-563-LAK

5   ROBERT BIRCH,

6              Defendant.               Conference

7   ------------------------------x

8                                       New York, N.Y.
                                        February 1, 2024
9                                       11:00 a.m.
    Before:
10
                    HON. LEWIS A. KAPLAN,
11
                                        District Judge
12
                        APPEARANCES
13

14  DAMIAN WILLIAMS
         United States Attorney for the
15       Southern District of New York
    JAMIE BAGLIEBTER
16       Assistant United States Attorney

17  LAW OFFICES OF JEFFREY LICHTMAN
         Attorneys for Defendant
18  BY:  JEFFREY HARRIS LICHTMAN

19

20  ALSO PRESENT:  JONATHAN C. LETTIERI, Pretrial

21

22

23

24

25
```

O21RBIRc

```
 1              (Case called)

 2              MS. BAGLIEBTER:  Good morning, your Honor.  Jamie

 3      Bagliebter from the government, and with me at counsel table is

 4      Pretrial Services Officer Jonathan Lettieri.

 5              THE COURT:  Good morning.

 6              MR. LICHTMAN:  Jeffrey Lichtman and Jeffrey Einhorn

 7      for Robert Birch.

 8              THE COURT:  Good morning.  I wanted to get a little

 9      more understanding of what is going on with the discovery and

10      how it affects this.  So I don't want to see the timetable

11      slide, so maybe you can enlighten me, folks.

12              MS. BAGLIEBTER:  Your Honor, I'm happy to begin.  Your

13      Honor, as the defense noted in their letter to the Court, the

14      substantial majority of the discovery in this case was produced

15      in December of last year.  That involves most of the records in

16      this case, phone records, social media records, Google, iCloud

17      records, and I think, most importantly, the government produced

18      to the defense on December 11, a 4,000-page communication

19      between the minor victim and the defendant, which tracks in

20      many ways the images and videos that underlie the charges in

21      the complaint -- I mean, in the indictment.  Excuse me.

22              And we've had discussions with the defense about where

23      the government -- where within the large volume of the

24      discovery the government views some of the most pertinent

25      evidence to help aid them in their efforts.  So at this --
```

O21RBIRc

| | |
|---|---|
| 1 | THE COURT:  You know, I'm a little floored when you |
| 2 | say 4,000 -- did you say word or page? |
| 3 | MS. BAGLIEBTER:  Page. |
| 4 | THE COURT:  Page? |
| 5 | MS. BAGLIEBTER:  Correct. |
| 6 | THE COURT:  What is this, the Encyclopedia Britannica? |
| 7 | MS. BAGLIEBTER:  Your Honor, this was a chat |
| 8 | communication between the victim and the defendant. |
| 9 | THE COURT:  I'm sorry, what kind? |
| 10 | MS. BAGLIEBTER:  Chat communications. |
| 11 | THE COURT:  Oh, chat communication. |
| 12 | MS. BAGLIEBTER:  Yes, text message communications that |
| 13 | they had over time.  The indictment in the case centers on |
| 14 | incidents that took place on three dates, even though those |
| 15 | three dates are not nearly isolated incidents, but the |
| 16 | communications that pertain to those dates and the images and |
| 17 | videos that correspond to those dates run hundreds and hundreds |
| 18 | of pages. |
| 19 | THE COURT:  Didn't they eat or sleep? |
| 20 | MS. BAGLIEBTER:  No, your Honor. |
| 21 | THE COURT:  I'm not really making light of it.  I |
| 22 | mean, it's -- |
| 23 | MS. BAGLIEBTER:  Nor am I.  I think over this time |
| 24 | period the abuse that was taking place on, these incidents did |
| 25 | last hours and hours and did involve the deprivation of sleep, |

O21RBIRc

1    and it took place while these communications were happening.

2    So we produced that first to the defense and talked to them

3    about where we found the pertinent communications, and that's

4    because the government and the defense have talked about, sort

5    of, next steps in this case and directing them to the

6    information that is most pertinent seems to be an efficient way

7    for them to assist in providing them the materials that they

8    need to.  There are a few items outstanding from the

9    government's perspective, but we have discussed them with the

10   defense, and they're familiar with them; namely, there are some

11   records from the school that are replete with public -- with

12   PII relating to a number of minors.  And so, we're going to

13   produce those.  We've agreed with the defense to produce those

14   attorneys' eyes only, so that we can get out very shortly.

15         And then, with respect to the devices that contain

16   child sexual abuse material, as the Court is aware, those need

17   to be reviewed at the FBI to be consistent with 18 U.S.C.

18   3509(m).  So we have discussed that with the defense, and it's

19   available for their review at any time.  We've also endeavored

20   to segregate as best as we can some amount of those devices

21   that does not include child abuse sexual material.  It's not

22   just images.  It also requires that we are break any links,

23   hyperlinks, to staff that would access child sexual abuse

24   material.  So we've endeavored to do that, and I think we can

25   produce some partial extractions of those devices safely, and

O21RBIRc

1    we expect to do that very quickly.  And that will just aid the

2    defense by requiring them to spend less time in the government

3    offices reviewing those devices.

4              THE COURT:  So give me a forecast end date.

5              MS. BAGLIEBTER:  So, your Honor, I think within a week

6    or two, those items can be produced.  And I'm not aware at this

7    time of any other materials that they would need, any other

8    discoverable materials.  And then, of course, the child sexual

9    abuse material, which is really the heart of this case, is and

10   has been available to them since our last conference.

11             THE COURT:  All right.  Mr. Litchtman, please?

12             MR. LICHTMAN:  Judge, all of that is accurate.  You

13   know, you are coming at this not from the place of amount of

14   knowledge that the two parties have because we've been knee

15   deep in this case for months.

16             THE COURT:  Yes, but you are wandering away from the

17   microphone, so I'm not hearing too well.

18             MR. LICHTMAN:  I'm sorry.  I apologize.  It should be

19   understood from the beginning, this is a case that is straight

20   mitigation.  This should be on a path for anything but

21   mitigation to resolve it that way.  It's a highly unusual case

22   because of the age of the defendant, who turned 18 just a few

23   months ago, and a lot of relationship occurred before he was

24   18.  In addition, there is such a long and winding road of

25   psychological issues that go back to not just junior high

O21RBIRc

```
 1   school but back to almost from when he could walk.
 2            So we've got a number of doctors.  We have four
 3   doctors that are involved trying to unravel this, because we
 4   need to put forth a mitigation package because the conduct --
 5   you've seen it in the indictment -- is so extreme that we need
 6   to explain it and try to make sense of it, and also, a path
 7   going forward with the defendant.
 8            THE COURT:  Well, when you say "mitigation package,"
 9   with what end in view?  I'm not sure what you mean by that
10   exactly.
11            MR. LICHTMAN:  Well, we're in a case right now, Judge,
12   with a 45-year mandatory minimum.
13            THE COURT:  Right.
14            MR. LICHTMAN:  So we're going to be, at the
15   government's invitation, understanding the Draconian
16   punishments with the charges that were filed, they asked us to
17   put together a package for them so that we can try to resolve
18   this case together to some large extent.  Obviously, we can't
19   do your job as well, Judge, but in terms of where this case
20   will be going.
21            THE COURT:  A negotiated resolution is what we're
22   talking about?
23            MR. LICHTMAN:  Yes.  And there's just so much
24   involved.  We have the number of doctors that we have.  We have
25   not gone through the pictures, the images.  When I tell you
```

O21RBIRc

1    that we're working on this case not just every day, but a good

2    part of the day with a number of lawyers, because there's so

3    much involved.  So what I respectfully -- what I don't want to

4    have happen, but I'm willing to if your Honor wants it, is I

5    would like to avoid setting a motion schedule because it's

6    really just superfluous and a waste of time for both parties,

7    because it's never -- first of all, there's no motions that are

8    so significant because we've consented to nearly every search

9    from when the investigation part began.  There was an initial

10   search.  We were hired.  Every other purported search that was

11   going to be, we consented to, including at the defendant's

12   college.  All of that stuff was consented to.  So there's not

13   really any kind of significant motion schedule because we're

14   not -- we're on the same page.  We're working on this together.

15        So what I'm trying to do is use this time to get all

16   these doctors quickly to get the work done.  And as I said, we

17   speak to the doctors not just one time a day, multiple times a

18   day.  We're getting through it.  We have to bring, perhaps,

19   some of the doctors to look at some of the images with us.  We

20   have to go through it, but it's not just to go through it just

21   to see what the evidence is against the defendant.  But we have

22   to try to understand how it fits in with the work that they are

23   doing.

24        So I know the case.  It's unusual in that sense, and

25   Judge, you know, we've all had -- every case that we've had

O21RBIRc

1   usually is you've got charges.  You've got evidence.  You make

2   motions, and you either go to trial or you plead.  This case is

3   different in a way because we're really working together on

4   this.

5          THE COURT:  Okay. I appreciate the update.  I'm going

6   to give you what you asked for.  Andy, let's set another date

7   in about two months.

8          THE DEPUTY CLERK:  Sure, Judge.  Judge, would Tuesday

9   April 9 at 11:00 a.m. be good.

10          THE COURT:  Work for everybody?

11          MR. LICHTMAN:  I think that will be fine.

12          MS. BAGLIEBTER:  Yes, your Honor.

13          MR. LICHTMAN:  Thank you, Judge.

14          THE COURT:  Okay.  Does the government have a request

15   for an extension of the Speedy Trial Act?

16          MS. BAGLIEBTER:  Yes, your Honor.  The government

17   moves the Court to exclude time between now and April 9, so

18   that the parties can continue their discussions about a

19   potential pretrial disposition and so the defense can review

20   the discovery and consider whether any motions should be made.

21          THE COURT:  Is there any objection, Mr. Litchtman?

22          MR. LICHTMAN:  No, your Honor.

23          THE COURT:  Time is excluded from now to and including

24   April 9.  I find that the interests of justice served thereby

25   outweigh the interest of the public and the defendant in a

O21RBIRc

1    speedy trial for the reasons stated by the government and the

2    defense for that matter.

3            Okay.  Thank you.  I appreciate you coming down.  I

4    just wanted to keep on top of it.

5            MR. LICHTMAN:  Thank you, your Honor.

6            MS. BAGLIEBTER:  Thank you, your Honor.

7            THE DEFENDANT:  Thank you, your Honor.

8            (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25